O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| S. Eagle | Not Reported | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | | Attorneys **NOT** Present for Defendants: | |

**Proceedings:**  IN CHAMBERS (No Proceedings Held)

This is a trademark dispute between two companies that market hair-care products. In September 2005, Plaintiff Garcoa, Inc. began labeling its products with a "Bio & Design" trademark embodying the word "bio," with a leaf over the letter "i." Also in September 2005, Garcoa began using a "BioINFUSION & Design" trademark comprising the Bio & Design trademark next to the word "INFUSION." In June 2009, Garcoa discovered that Defendant PH Beauty Labs, Inc. was marketing hair-care products labeled "biobalance." On July 7, 2009, Garcoa sued PH Beauty under the Lanham Act (15 U.S.C. §§ 1114, 1125) for trademark infringement and for false designation of origin. Over a week later, Garcoa filed an *ex parte* application for a temporary restraining order ("TRO") and order to show cause re: preliminary injunction enjoining PH Beauty from using the mark "biobalance" on hair-care products. This Court denied the application for a TRO because Garcoa failed to establish sufficient reasons for proceeding *ex parte*. After reviewing the parties' briefs on the application for a preliminary injunction, the Court held a hearing on August 10, 2009, at which it circulated a tentative order.

For the reasons discussed below, the Court DENIES the application for a preliminary injunction.

## I.     FACTUAL BACKGROUND[1]

### A.     The Parties' Marks

---

[1] Unless otherwise stated the facts below are undisputed.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

What Garcoa calls its "Bio & Design" trademark consists of the lowercase word "bio" in a sans serif typeface. Over the letter "i" is a leaf design in which the stem of the leaf is clearly visible. *See* Exhibit 1. Plaintiff registered this trademark on the Principal Register on December 5, 2006, as Registration No. 3,179,083.

Plaintiff's BioINFUSION & Design trademark is comprised of the Bio & Design trademark adjacent to the word "INFUSION," forming the word "bioINFUSION." *See* Exhibit 2. "INFUSION" is written in all caps and in a different typeface than "bio." Garcoa registered this trademark on October 10, 2006, as Registration No. 3,152,674. In all of the examples of the mark's use filed with the Court, the mark is set against a plain white or cream-colored background, with the letters arranged vertically, "b" at the top and "N" at the bottom. *See* Exhibit H.

Plaintiff Garcoa's "Bio & Design" and "BioINFUSION & Design" trademarks have been in continuous use on the bottles of Garcoa's hair-care products since September 12, 2005. Rubin Decl. ¶¶ 2-3.

Defendant PH Beauty prints two marks on the bottles of the hair-care products at issue in this case. These products are distributed by a division of PH Beauty called Freeman Beauty. The first mark, which allegedly infringes Plaintiff's trademarks, is the word "biobalance." *See* Exhibit 4. In this mark, the letters for "bio" are in a different typeface than for "balance," but all of the letters are lowercase. All the letters in the word "biobalance" are arranged vertically, with "b" at the top and "e" at the bottom. The dot over the "i" in "bio" is in a teardrop shape that (if glanced at only briefly) could be interpreted as a leaf. The mark is set against a background of whimsical colored circles, curves, and dots. *See* Exhibit I. Displayed prominently below the "biobalance" mark is a second mark, the word "FREEMAN." This mark is a registered trademark that has been in use since 1954. According to the President of Freeman Beauty, PH Beauty began selling products with the "biobalance" mark in January 2008, though Garcoa states that it did not discover them until June 2009. Dickstein Decl. ¶ 2.[2]

In addition to the distinctive marks on each product, the respective products are

---

[2] The Dickstein declaration was filed under seal to protect PH Beauty's financial information.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

sold in bottles with dissimilar shapes. Garcoa has two bottles, one of which is clear green and relatively flat, with a gold cap. *See* Exhibit H. The other is white, relatively flat, with ridges around the label, and with a black cap. *Id.* PH Beauty's bottles are white, cylindrical, and smooth, and have either a white or black cap. *See* Exhibit I.

### B. Sales of the Marked Goods

Each defendant sells at least six different products with the contested marks. *See* Exhibit 4; Exhibit H. Garcoa's "bioINFUSION" products are sold exclusively through more than 5,000 Walgreens retail outlets and through Walgreens's website. Rubin Decl. ¶ 4. PH Beauty sells its "biobalance" products through its website, freemanbeauty.com, and through several retailers, including Albertson's, Duane Reade, Drug Emporium, Fred Meyer, A&P/Pathmark, Harmon/Bed Bath & Beyond, Winn Dixie, HEB, Savemart, Bartells, Natco Pharmacy, and Brookshires Grocery. Dickstein Decl. ¶ 2.

## II. LEGAL STANDARD

In order to obtain a preliminary injunction in a trademark case, a plaintiff must demonstrate either: (1) a probability of success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions going to the merits and a balance of hardships that tips sharply in its favor. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205-06 (9th Cir. 2000). "This analysis creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter Reg. Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). The Supreme Court recently overruled this formulation in part, by holding that "the Ninth Circuit's 'possibility' standard [for irreparable injury] is too lenient. Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat'l Res. Def. Council*, 129 S.Ct. 365, 375 (2008) (emphasis in original). In light of this holding, this Court may grant a preliminary injunction only if the moving party shows that irreparable injury is likely in the absence of an injunction. Otherwise, the standards above remain applicable.

In trademark infringement cases, if the plaintiff demonstrates a likelihood of

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

success on the merits (by showing a likelihood of confusion), the Court will presume irreparable injury because trademark damages are, by their very nature, irreparable. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999). "This presumption effectively conflates the dual inquiries of this prong into the single question of whether the plaintiff has shown a likelihood of success on the merits." *GoTo.com*, 202 F.3d at 1205 n.4.[3]

## III.  ANALYSIS

### A.  Probability of Success on the Merits: Likelihood of Confusion

To establish trademark infringement, Garcoa must demonstrate that PH Beauty is using a mark confusingly similar to Garcoa's valid and protectable mark. *Brookfield*, 174 F.3d at 1046. PH Beauty disputes the validity of the Bio & Design trademark, but the Court need not and will not reach this issue because it finds that Garcoa has failed to show that it is likely to establish a likelihood of confusion as to that mark or as to the

---

[3] In *eBay Inc., v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 1841 (2006), the Supreme Court found that the Federal Circuit had erred in its categorical rule that permanent injunctive relief will generally issue once a patentee establishes infringement and validity. The Supreme Court "[held] only that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* The Court also noted that "[t]his approach is consistent with [its] treatment of injunctions under the Copyright Act," under which the "Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *Id.* at 1840. Although some district courts have applied the reasoning of *eBay* to motions for preliminary injunction in trademark infringement cases, the Ninth Circuit has noted that irreparable harm may be presumed upon a finding of a likelihood of success, albeit without citing *eBay*. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GMBH*, --- F.3d ----, 2009 WL 1886172, *3 (9th Cir. July 2, 2009). Thus, although the Supreme Court's decision in *eBay* has cast some doubt on to the continued viability of the presumption of irreparable harm in trademark cases, this Court will apply current Ninth Circuit law.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

BioINFUSION & Design mark.[4]

      Courts in the Ninth Circuit consider the eight factors in *AMF Inc. v. Sleekcraft Boats* to analyze the likelihood of confusion in trademark infringement cases. *Brookfield,*, 174 F.3d at 1053-54 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). Here, the eight factors (which are not necessarily the exclusive factors for determining infringement) are: (1) the strength of Garcoa's marks; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) PH Beauty's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *Id.* This eight-factor test is "pliant," and the relative importance of each individual factor is case-specific. *Id.* at 1054.

      The Ninth Circuit has emphasized that in the context of goods and services sold on the Internet the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel. *Interstellar Starship Servs. Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002) ("*Interstellar*"); *GoTo.com*, 202 F.3d at 1205; *Brookfield*, 174 F.3d at 1054. When this "controlling troika" suggests confusion is likely, the other factors must "weigh strongly" against a likelihood of confusion to avoid the finding of infringement. *Interstellar*, 304 F.3d at 942 (citations omitted). When the three factors do not clearly indicate a likelihood of confusion, courts should weigh the other *Sleekcraft* factors. *Id.* at 943.

      The applicability of this "controlling troika" is not clear in this case, where the goods are sold both on the Internet and in brick-and-mortar stores, and there are no facts on the record showing which channel is dominant. The Court will thus consider all of the *Sleekcraft* factors, but will begin with the "Internet trinity."

      1.     <u>Similarity of the marks</u>

---

[4] PH Beauty's opposition brief addressed the issue of trade dress, which is raised in the declaration of Garcoa's President. But Garcoa did not raise this issue in its *ex parte* application, and in its reply brief it states that its motion for a preliminary injunction does not seek relief on the ground of trade dress infringement.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

The greater the similarity between two marks, the greater the likelihood of confusion. *GoTo.com,* 202 F.3d at 1206. In determining whether two marks are similar, courts consider their sight, sound and meaning. *Id.* "In analyzing this factor, 'the marks must be considered in their entirety and as they appear in the marketplace.'" *Brookfield,* 174 F.3d at 1054 (citations omitted). According to the "anti-dissection" rule, "[t]he commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail." *Estate of P. D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920); 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:41(4th ed. 2004). Courts weigh similarities more heavily than differences. *GoTo.com,* 202 F.3d at 1206. Where the goods are directly competitive, as they are here, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products. *Sleekcraft*, 599 F.2d at 350.

The Court finds that Garcoa has failed to show that the marks at issue are similar. Although the syllable "bio" is used by PH Beauty in a form that is similar to Plaintiff's Bio & Design trademark in some respects — particularly the word "bio" itself, the visual emphasis on the word "bio" and the use of a dot that could be interpreted as a leaf — the differences between the marks are striking and outweigh the similarities. The Court has considered the Bio & Design mark separate and apart from the BioINFUSION & Design mark (which incorporates the BioINFUSION & Design mark), but it has considered the mark as it "appear[s] in the marketplace." *See Brookfield,* 174 F.3d at 1054 (citations omitted). As discussed below, this analysis takes into account the text and images surrounding the Bio & Design mark and the allegedly infringing marks, because this context goes to the ultimate question of consumer confusion.

Most importantly, as Garcoa acknowledges, Defendant's mark always appends to "bio" the word "balance." "Balance" is not an element of the Bio & Design registration. Nor is it an element of Garcoa's BioINFUSION & Design registration, which appends the word "INFUSION." These are obvious differences of sight and sound.

The marks are also distinguishable by their dissimilar visual presentations. Although both companies use a bold typeface to emphasize the syllable "bio" on their product labels, and PH Beauty's mark has a teardrop-shaped dot that could be construed as a leaf, the differences between the marks overcome these similarities. First, Garcoa's mark combines lowercase and capital letters, while PH Beauty's mark is all lowercase.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

Second, in all of the examples of PH Beauty's mark before the Court, the mark is set against a brightly colored arrangement of circles, dots, and wavy lines, whereas Garcoa's mark is always set against a plain background. Third, Garcoa displays its mark in such a way that the "o" in "bio" rests in part on top of the "I" in "INFUSION," but on PH Beauty's products there is no such overlap. Fourth, the parties use different fonts: Garcoa's is elongated and PH Beauty's is more compact and sleek. Fifth, the parties use different colors to emphasize the "bio" portion of their marks.

Any similarity in the parties' marks is further lessened by their trade dress. *See* MCCARTHY § 23:60. PH Beauty prominently displays its company name, "FREEMAN," on the front of its products, in capital letters, whereas Garcoa does not display any company name. *See Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971) (likelihood of confusion mitigated where "the name of the company invariably accompanied the [trademarked] slogan"). Below "FREEMAN," PH Beauty's bottles say "Beverly Hills, CA." Garcoa's products display no geographical origin.

The shape of the bottles used by each company is also different. As described above, one of Garcoa's bottles is clear green and relatively flat, with a gold cap. The other Garcoa bottle is white, also relatively flat, with ridges around the label, and with a black cap. *See* Exhibit H. In contrast, PH Beauty's bottles are white, cylindrical, and smooth, and have either a white or black cap. *See* Exhibit I.

Taken together, these characteristics create overall different impressions of the products, with or without the benefit of a side-by-side comparison. The key similarities are heavily outweighed by the differences, and Garcoa has not established that the marks as they appear on the products are so similar as to result in a likelihood of confusion. Thus, this factor favors PH Beauty.[5]

---

[5] Garcoa cites *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330 (Fed. Cir. 2004), a case in which the Federal Circuit applied Ninth Circuit law to uphold a district court's finding that the plaintiff was likely to prevail on its claim that the mark "CrossBow" infringed on the trademark "BowFlex." But in *Nautilus* the Federal Circuit applied a highly deferential standard of review because the district court was ruling on a motion for preliminary injunction. Under that standard, the Federal Circuit may not

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

    2.    <u>Identity of the goods</u>

Related goods are those "products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348 n.10. In determining whether goods are related, courts consider whether the goods are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use or function. *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003).

Both parties sell hair-care products, and PH Beauty does not dispute that this factor favors Garcoa.

    3.    <u>Marketing channels used</u>

Convergent marketing channels increase the likelihood of confusion between marks. *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Therefore, courts examine the proximity of marketing channels and presence or absence of direct competition, with similarity in advertising as one factor in that examination. *Id. See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir.) ("This factor takes into consideration where, how, and to whom the parties' products are sold. . ."), *cert. denied*, 449 U.S. 899 (1980).

---

reverse unless the court applied the incorrect law, relied on clearly erroneous factual findings, or otherwise abused its discretion. *Id.* at 1334 (citations omitted). "The Ninth Circuit views the ultimate conclusion of likelihood of confusion as a mixed question of law and fact, and it reviews that conclusion under the clearly erroneous standard." *Id.* (citation omitted). Thus, this Court is not bound by the district court's conclusion in *Nautilus* that the Federal Circuit chose not to disturb. In any event, *Nautilus* is distinguishable because as to the similarity of the marks the Federal Circuit stated that it agreed "that the marks are not that similar, but we recognize, as the district court did, that this weakness is to some extent compensated for by the identity of the products and the strength of Plaintiff's mark." *Id.* at 1346. But as discussed below, the Court in this case does not find that Plaintiff's marks are particularly strong. Unlike in *Nautilus Group*, Garcoa has not presented evidence that its marks enjoy a "high level of brand recognition" as a result of extensive advertising. *See id.* at 1343.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

Garcoa's "bioINFUSION" products are sold exclusively in Walgreens retail outlets and the Walgreens website. PH Beauty's products are sold in several other chain stores and on its own website. Although the products sold in brick-and-mortar stores are not "sold under the same roof," this fact is not necessarily significant where the marketing channels used by the parties are "parallel." *Sleekcraft*, 599 F.2d at 353. In this case, both parties are selling their products through chain drug stores, to essentially the same class of purchasers.[6]

The fact that both parties sell their products on different websites does not factor heavily into the analysis of this factor, as neither party has presented evidence of what proportion of sales are made on the Internet. Even if they had, in general, the mere fact that goods are sold on both the Internet and in retail shops does not change the application of this factor. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002) ("[t]he proper inquiries are whether both parties 'use the Web as a *substantial* marketing and advertising channel,' whether the parties' marks 'are utilized in conjunction with Web-based products,' and whether the parties' marketing channels overlap in any other way."). On this record, it does not appear that the parties' use of the Internet is significant enough to be pertinent.

In light of the fact that the parties sell their products in similar retail outlets, to the same customer market, this factor weighs in favor of Garcoa.

   4. <u>Strength of the marks</u>

    a. Conceptual strength

"The strength of a given mark rests on its distinctiveness. The scope of protection afforded a strong mark is greater than that afforded a weak one." *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir. 1988), *abrogation in part on other grounds recognized by Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n.1 (9th Cir. 1990). The strength of a mark is usually conceptualized along a continuum of increasing inherent distinctiveness. *GoTo.com*, 202 F.3d at 1207 (citing

---

[6] Plaintiff states in its reply brief that Defendant's products retail for $9.99, and its products sell for $7.99 - $14.99.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

*Brookfield*, 174 F.3d at 1058)). From weakest to strongest, marks are categorized as generic, descriptive, suggestive, arbitrary or fanciful. *Id.* Federal registration constitutes *prima facie* evidence that the mark is not generic. *Miss World (UK) Ltd.*, 856 F.2d at 1448.

Garcoa's briefs do not make clear whether it considers its marks arbitrary or fanciful, or whether it considers them to be merely suggestive. PH Beauty contends that the marks are either suggestive or descriptive.

A fanciful mark is a "nondictionary" word, whereas an arbitrary mark is a common word used in uncommon or unexpected ways. *Interstellar*, 304 F.3d at 943 n.6. A suggestive mark "conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." *Brookfield*, 174 F.3d at 1058, n.19 (using "Roach Motel" insect traps as an example). A suggestive term conveys a message "so remote and subtle that it is really not likely to be needed by competitive sellers. . . ." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987). Although considered distinctive, a suggestive mark is nonetheless a presumptively weak mark that is "entitled to a restricted range of protection." *Sleekcraft*, 599 F.2d at 350; *see also Brookfield*, 174 F.3d at 1058 (noting that "unlike arbitrary or fanciful marks, which are typically strong, suggestive marks are presumptively weak."). However, commercial success can transform a suggestive mark into a strong mark. *See, e.g.*, *Entrepreneur Media*, 279 F.3d at 1144; *Brookfield*, 174 F.3d at 1058.

Descriptive terms are not inherently distinctive and confer trademark rights only upon a showing of secondary meaning, while suggestive terms are inherently distinctive trademarks even without a showing of secondary meaning. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 872 (9th Cir. 2002). A descriptive mark "define[s] qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047, n. 8 (9th Cir. 1998). Because the message conveyed by a descriptive mark is "direct and clear," competitive sellers are likely to need to use the term in describing or advertising their goods. *Rodeo Collection*, 812 F.2d at 1218 (citation omitted).

If the required analysis were based solely on the text of Plaintiff's marks, the Court

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

would find that the Bio & Design and BioINFUSION & Design marks are suggestive, rather than arbitrary, fanciful, or descriptive. "Bio" is a common word. Although "bioINFUSION" is a made-up word, it combines two actual words. Both terms convey "an impression of a good but require[] the exercise of some imagination and perception to reach a conclusion as to the product's nature." The marks are not descriptive because "a consumer must use more than a small amount of imagination to make the association" between "bio" or "bioINFUSION" and their various possible meanings. *See Rodeo Collection*, 812 F.2d at 1218.

Garcoa's marks are, however, strengthened by the fact that it has not trademarked the mere use of the words "bio" or "bioinfusion," but a stylized version of those marks. Specifically, the registered marks have a distinctive lettering style that includes an artistic image of a leaf as part of the letter "i" in "bio." "[T]he law of trademark accords stronger protection to the stylized version of certain words used as trademarks than to those words themselves." *Time, Inc. v. Peterson Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999). *See also Sunbeam Lighting Co. v. Sunbeam Corp.*, 183 F.2d 969 (9th Cir. 1950) (limiting injunction to use of word "Sunbeam" in a typeface resembling that of the plaintiff's); 2 MCCARTHY, *supra*, §§ 11:30 ("Even if a descriptive word or composite of words is not registrable as a trademark, a distinctive display of the words is registrable in the same way as any distinctive picture."), 12:40 (logo registrations of generic names) (4th ed. 2006).

Thus, the Court finds that the appearance of the registered "bio" and "bioBALANCE" marks strengthens their inherent distinctiveness.

### b. Commercial strength

The commercial strength of a mark refers to its degree of recognition in the minds of the relevant customer class, and it is measured by advertising expenditures, length of exclusive use, and other indicia of actual marketplace recognition. *See Entrepreneur Media*, 270 F.3d at 1144; *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224 (C.D. Cal. 2004). When there is widespread consumer recognition of a mark, there is an increased likelihood that consumers associate that mark with its promoter, and therefore an increased likelihood of confusion if another user of the mark is in fact not related to the first.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

But the actual recognition of a mark is diminished when there is a "crowded field" of similar marks in the relevant field of commerce. "In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd." *Miss World (UK) Ltd.*, 856 F.2d at 1449 (internal quotation marks and citation omitted). "Simply put, 'a mark which is hemmed in on all sides by similar marks on similar goods cannot be very "distinctive." It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other.'" *Id.* (quoting McCarthy treatise).

Garcoa has presented very little evidence to show commercial strength, aside from the duration of its use of the Bio & Design and BioINFUSION & Design marks. Garcoa began using those marks in September 2005. PH Beauty, however, has presented undisputed evidence that it began using its mark just over two years later, in January 2008. *Compare Nautilus Group*, 372 F.3d at 1333 (plaintiff used mark for nearly twenty years before defendant introduced its product, and spent in excess of $233 million in promotion efforts). Garcoa has not introduced evidence of advertising expenditures or any other indicia of actual marketplace recognition.

PH Beauty has provided evidence suggesting that the use of the word "bio" in connection with hair-care products is widespread. This evidence includes a photograph of five hair-care products in addition to the parties' products whose packaging prominently uses the term "bio." *See* Rose Decl. Ex. L. The word "bio" on these products is not in precisely the same format as in the Bio & Design trademark, but these marks are certainly "similar marks on similar goods." Although the Court is unable to assess conclusively the weight of all the evidence filed by PH Beauty (*e.g.*, Defendant filed lists from USPTO databases, but did not distinguish between applications or valid registrations and did not show that the registered trademarks were in use), Defendant's evidence does cast serious doubt on the strength of Garcoa's marks.

In sum, the fact that Garcoa registered its marks in a particular stylized format strengthens their distinctiveness. On the other hand, these marks are used in what appears to be a crowded field, and have not been used for an exceptionally long period of time. Taking all of these factors into account, the Court finds that Garcoa has failed to show that it is likely that it will be able to establish that the marks at issue are strong ones. But nor has PH Beauty shown that the mark is weak.

Case 2:09-cv-04859-AHM-E   Document 32   Filed 08/10/09   Page 13 of 17   Page ID #:802

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

Thus, this factor weighs in favor of neither party.

### 5. Evidence of actual confusion

"Because it is often difficult for a plaintiff to obtain evidence of actual confusion, his failure to proffer such evidence is not dispositive." *Sleekcraft,* 599 F.2d at 352. Garcoa states that it has been unable to establish any instances of actual confusion, and it has not identified any means by which it hopes to acquire such evidence. However, evidence of actual confusion is not necessary to secure injunctive relief. *See Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir.1980) (affirming the grant of an injunction for plaintiff despite the absence of evidence of actual consumer confusion).

This factor favors neither party.

### 6. Type of goods and degree of care likely to be exercised by purchasers

The ordinary purchaser is assumed to take more care in purchasing "expensive" items which he or she buys infrequently, than in buying everyday, relatively inexpensive items. *See Sleekcraft,* 599 F.2d at 353. Of course, "price alone is not determinative of the care a consumer will take in making purchases, and our touchstone remains the general impression that is left with the ordinary consumer." *Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 965 (2d Cir. 1996). Thus, while a court might find that generally purchasers of relatively inexpensive items are not sophisticated, it must look at the specific products in question rather than just the price.

The Ninth Circuit has recognized that "[c]onsumers who purchase [hair care] products learn of necessity to distinguish between many products designed for application to human hair." *Redken Labs., Inc. v. Clairol, Inc.*, 501 F.2d 1403, 1405 (9th Cir. 1974) (affirming district court finding that hair-care product sold under the mark "CURL & CONDITION" not likely to be confused with hair-care product sold under the mark "CONDITION."). Many other courts have also recognized that purchasers of fragrances and skin care products tend to exercise a high degree of care and brand consciousness. *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 1001-02 (C.D. Cal. 2002) (citing, *inter alia*, *Lucien Lelong, Inc. v. Lenel, Inc.*, 181 F.2d 3, 4 (5th Cir. 1950);

Case 2:09-cv-04859-AHM-E   Document 32   Filed 08/10/09   Page 14 of 17   Page ID #:803

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

*Conopco, Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d 242, 257 (S.D.N.Y. 1999); *Giorgio Beverly Hills*, 869 F. Supp. at 185; *Clinique Labs., Inc. v. Dep Corp.*, 945 F. Supp. 547, 556 (S.D.N.Y. 1996)).

According to Plaintiff's reply brief, the products at issue here sell for between $7.99 and $14.99. But in light of the care that even ordinary consumers take in selecting hair-care products, the Court finds that this factor weighs in favor of Defendant.

      7.     <u>Intent in selecting the mark</u>

Knowing adoption of a mark closely similar to another's allows a court to presume that the public will be deceived as the alleged infringer intended. *Sleekcraft*, 599 F.2d at 354. However, this factor is of minimal importance and there is no requirement that the defendant actually intend to confuse customers. *GoTo.com*, 202 F.3d at 1208.

PH Beauty is deemed to have had constructive notice of Garcoa's rights based on Garcoa's federal registrations. 15 U.S.C. § 1072. The Bio & Design mark was registered on December 5, 2006, and the BioINFUSION & Design mark was registered on October 10, 2006.

Garcoa has presented no direct evidence of PH Beauty's intent to copy Garcoa's marks, or of PH Beauty's actual knowledge of its marks. Garcoa argues, however, that intent may be inferred when a similar mark is adopted by a defendant with constructive notice. Garcoa relies on *Brookfield Communications*, but there the Ninth Circuit held that "this factor is only relevant to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)." *Brookfield*, 174 F.3d at 1059. *See also* 4 MCCARTHY, *supra*, § 23:120 ("It is difficult to see how such continued use by defendant could be construed as an intent to deceive except in the case of a very clear and legally unambiguous infringement.").

Here, the marks are not very similar, and all indications are that PH Beauty has a good faith belief that its use of the "biobalance" mark is not infringing. Therefore, the Court will not presume willful intent. This factor favors neither party.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

        8.      <u>The likelihood of expansion</u>

      "A strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. When the two companies already compete to a significant extent, this factor is of minimal importance. *See Brookfield*, 174 F.3d at 1060.

      Garcoa did not address this factor. PH Beauty addressed this element by suggesting that Garcoa's business will not expand, because Garcoa's products are sold exclusively at Walgreens. But that inference does not bear on whether PH Beauty intends to expand its business. Thus, in the absence of relevant evidence this factor favors neither party.

        9.      <u>Summary of *Sleekcraft* factors</u>

      The Court concludes that it is not likely that Garcoa will ultimately prove a likelihood of consumer confusion. The factors that favor Garcoa are the relatedness of the parties' goods and the fact that their marketing channels converge. But the Court has found that the parties' marks are more dissimilar than similar, and that consumers tend to exercise great care in selecting hair-care products. Coupled with the questionable strength of Plaintiff's marks, and the lack of evidence of actual confusion or of PH Beauty's intent, Garcoa has not demonstrated that it will likely prove a likelihood of consumer confusion. Therefore, even assuming that Garcoa is likely to prove it is the owner of a protectable trademark, it has not demonstrated a likelihood of success on the merits of its trademark infringement claim.

    **B.**    **Irreparable Injury/Balance of Hardships**

      Where a party demonstrates a likelihood of succeeding on a trademark infringement claim, the court may presume irreparable injury. *GoTo.com*, 202 F.3d at 1209. The presumption does not apply here because Garcoa has not demonstrated a probability of success on the merits. Therefore the Court proceeds to the alternate formulation recognized in Ninth Circuit case law, under which Garcoa could be entitled to a preliminary injunction if it establishes "the existence of serious questions going to the merits and that the balance of hardships tips sharply in [its] favor." *See GoTo.com*,

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

202 F.3d at 1204-05.

Even assuming that Garcoa has established the existence of serious questions going to the merits, it has not demonstrated that the balance of hardships tips sharply in its favor. Garcoa has presented no evidence that it has suffered, or will suffer, irreparable harm due to PH Beauty's actions. Instead it relies solely on the presumption of harm adopted by courts in the Ninth Circuit when a plaintiff shows a likelihood of success on the merits of its trademark claim. Garcoa has failed to show such a likelihood, and has thus failed to present any evidence that the balance of hardships tips sharply in its favor.

Furthermore, Defendant has presented evidence that it will suffer harm if it has to re-label its stock of "biobalance" products. Although Plaintiff contests the extent of the damages PH Beauty will suffer, there is little question that Defendant will be harmed.

The Court thus finds that Garcoa has failed to show that the balance of hardships tips sharply in its favor.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Garcoa's motion for a preliminary injunction.[7]

_____ : _____
Initials of Preparer    se

---

[7] Docket No. 6.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4859 AHM (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | GARCOA, INC. v. PH BEAUTY LABS, INC., et al. | | |

*Garcoa Inc. v. PH Beauty Labs Inc.*, CV 09-4859
Draft Order on Preliminary Injunction

I.   FACTUAL BACKGROUND ........................................ 1
     A.   The Parties' Marks ...................................... 1
     B.   Sales of the Marked Goods ............................... 3

II.  LEGAL STANDARD .............................................. 3

III. ANALYSIS .................................................... 4
     A.   Probability of Success on the Merits: Likelihood of Confusion ....... 4
          1.   Similarity of the marks .......................... 5
          2.   Identity of the goods ............................ 8
          3.   Marketing channels used .......................... 8
          4.   Strength of the marks ............................ 9
          5.   Evidence of actual confusion .................... 12
          6.   Type of goods and degree of care likely to be exercised by purchasers
               ................................................ 13
          7.   Intent in selecting the mark .................... 14
          8.   The likelihood of expansion ..................... 14
          9.   Summary of *Sleekcraft* factors ................. 15
     B.   Irreparable Injury/Balance of Hardships .................. 15

IV.  CONCLUSION .................................................. 16